550 A.2d 428

**Wayne PETTEE**

v.

**Helen PETTEE.**

**No. 445, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Dec. 2, 1988.

Clarence W. Sharp, Randallstown, for appellant.

Ann M. Turnbull (Frank, Bernstein, Conaway & Goldman, on the brief), Baltimore, for appellee.

Argued before WILNER, GARRITY and BLOOM, JJ.

WILNER, Judge.

On January 2, 1986, Helen Pettee, through her attorney, Ann Turnbull, filed a complaint in the Circuit Court for

Anne Arundel County seeking an absolute divorce from her husband Wayne. She charged Wayne with adultery and asked, in addition to a divorce, for *pendente lite* and permanent alimony, a monetary award based on marital property, a determination of the ownership of the real and personal property of the parties, and counsel fees and costs. Through his attorney, Thomas N. Evans, Jr., Wayne answered the complaint, denying the allegation of adultery.

Aside from some discovery, nothing much happened in the case until April 7, 1986, when a hearing was conducted on Helen's request for *pendente lite* support. It was not until three weeks later, however—April 28—that the court entered a *pendente lite* order. The order directed Wayne to pay $950 by April 10, 1986—18 days prior to the date of the order—and thereafter to pay $750 per month, as well as to notify the court of any change of address or employment.[1]

On April 22, 1986—after the *pendente lite* hearing but before the order was entered—Helen, again through Ms. Turnbull, filed an Amended Complaint for Support and Maintenance. She repeated her charge of adultery and complained, in addition, that Wayne had abandoned her. But she no longer sought a divorce, either absolute or limited; nor, of course, in light of that, did she seek a monetary award based on marital property. Aside from a standard prayer for general relief, she sought only *pendente lite* and permanent spousal support, counsel fees, and costs.

On April 29, Wayne answered the Amended Complaint and filed a Counter Complaint for Limited Divorce. In his Answer, he again denied the accusatory allegations and implied that, as Helen was 62 years of age and eligible for social security and disability benefits, she was not in need of support. In his Counter Complaint, he charged Helen

---

1. The obligation to notify the court of any change of address or employment is also required by Md.Fam.Law Code Ann. § 10–129.

with constructive abandonment and sought a limited divorce and a monetary award. Helen moved to dismiss the Counter Complaint by reason of Wayne's refusal to answer an interrogatory inquiring into his alleged adultery. On July 17, 1986, the court granted her motion and dismissed the Counter Complaint unless Wayne answered the interrogatory by August 13. There is no indication that he did so, and so the Counter Complaint stood dismissed, leaving open only Helen's Amended Complaint and various motions concerning Helen's request for a lien on Wayne's salary from the Federal Government.

Judge Morris Turk conducted an evidentiary hearing on the Amended Complaint in October, 1986. On January 22, 1987, Judge Turk entered an Order directing Wayne to pay permanent alimony of $875 per month, commencing December 31, 1986, and continuing, subject to further order of the court, until the death of either party or Helen's remarriage. The order further directed Helen to make the mortgage payments on the family home, required each party to pay half the taxes on that home, directed Wayne to pay $1,000 toward Helen's counsel fee and $1,038 toward an alimony arrearage, required him to keep Helen covered under his existing medical insurance, and directed that he pay "the costs of this proceeding." That order clearly disposed of the Amended Complaint; no claim or prayer for relief in that pleading was left unresolved. At some point after the hearing but before the entry of Judge Turk's order, Wayne retired from Federal service and moved to Colorado. In January, 1987, through Mr. Evans, he informed both the court and Ms. Turnbull of his new address.

The proceeding now before us commenced on August 3, 1987, with a petition by Helen, through Ms. Turnbull, to hold Wayne in contempt of court for failure to pay both the full amount of the alimony ordered by Judge Turk and his share of the real estate taxes. Upon that petition, the court signed a show cause order directing Wayne to appear in person on September 17, 1987, and show cause why he should not be held in contempt of court, provided that a

copy of the petition and order "are served upon Thomas N. Evans, Jr., Esquire, attorney for Defendant, WAYNE PETTEE, on or before the 31st day of August, 1987."

According to the docket entries, a copy of the petition and order was mailed to Mr. Evans on August 7 "for service on WAYNE PETTEE." For whatever reason, no response was made by either Mr. Evans or Wayne, and so, on September 22, another show cause order was issued. This one, also directed to be served on Mr. Evans, ordered Wayne to appear in person before the court on October 26, 1987. A copy of that order was mailed to Mr. Evans on September 25, 1987.

In response to the second show cause order, Mr. Evans wrote to Ms. Turnbull, pointing out that, as more than 30 days had elapsed since the final order in the case, under Md.Rule 2–132 he was no longer counsel of record for Wayne, and that he had no obligation to attend the hearing scheduled for October 26. Mr. Evans, in fact, did not attend the hearing; nor did Wayne. When the court, through Judge Goudy, inquired about that, Ms. Turnbull asserted:

"MS. TURNBULL: We served the Show Cause Order on his counsel of record who is—

COURT: Was his counsel of record in the case more than thirty days after the last?

MS. TURNBULL: The case is pending, there's no last Order that—

COURT: Oh, there's no last Order?

MS. TURNBULL: It's a *pendente* ... it's a *pendente lite* Order.

COURT: All right. Oh, wait a minute.

MS. TURNBULL: Judge Turk's Order of January twenty-two is a *pendente lite* Order.

COURT: And he wasn't struck?

MS. TURNBULL: No, he hasn't. He's taken that position, that he's not in the case anymore but he's not

stricken and he hasn't done anything to get out of the case and the case is pending.

COURT: Okay, that's my question.

MS. TURNBULL: So, we've got ... we have, I believe, valid service on Mr. Pettee who's residing in Colorado."

(Ellipses in original.)

Accepting Ms. Turnbull's representation that the January 22 order was merely a *pendente lite* order and that the action had not bee concluded, Judge Goudy proceeded with the hearing and, based on testimony given by Helen, entered an *in personam* judgment against Wayne for $7,460 and issued a bench warrant for his arrest. This appeal followed, Wayne arguing that (1) the January 22, 1987 order *was* a final judgment in the case, (2) under Md.Rule 2–132(d), Mr. Evans's appearance as counsel for Wayne automatically terminated 30 days later, and (3) service of the show cause order on Mr. Evans was therefore ineffective.

■ Helen, through Ms. Turnbull, persists in her claim that the action was not concluded by the January 22 order. She tells us in her brief:

"This case began as a divorce case. As was obvious to the circuit court, and surely is obvious to this Court as well, the only reason that Helen Pettee amended her original Complaint for Absolute Divorce to a Complaint for Support and Maintenance was to prolong her ability to remain in the family home, which was virtually the only asset of the marriage, and which would be subject to sale immediately upon the issuance of any Judgment of Divorce. Equally obvious is the fact that Wayne Pettee, now residing in Colorado, has failed to come back to Maryland, obtain his divorce and force the sale of the house, only because of his reluctance to submit to the jurisdiction of the state under the circumstances of his contemptuous failure to pay alimony. The most obvious point in the whole case is that it is not over."

With respect to *that* assertion, we observe that what may be obvious to Helen or Ms. Turnbull is not at all obvious to us. We have no idea why Helen decided to withdraw her request for divorce and proceed, through an Amended Complaint, to seek only spousal support; nor does anything in the record suggest a reason. We know only that she was in her early sixties at the time and that she clearly, and presumably with Ms. Turnbull's advice, abandoned her pursuit of a divorce and never sought to reinstate it. Nor is it obvious that Wayne has failed to return to Maryland to "obtain his divorce." Wayne's action for divorce was dismissed on Ms. Turnbull's motion.

If there is anything that is obvious to us, it is that Judge Turk's January 22, 1987 order disposed of every claim and every request for relief then pending in the case. When that order was filed, the action was terminated in the Circuit Court; there was nothing further for either party to do in that court. The order was a final judgment in every sense and could have been appealed as such. Ms. Turnbull's representations to Judge Goudy that the order was a *pendente lite* one and that the case was still "pending" had no basis in fact and were absolutely unwarranted.

That still leaves for resolution, however, the interplay between three Rules and a statute.

Md.Rule 1–321(a) provides, in relevant part:

"Except as otherwise provided in these rules or by order of court, every pleading and other paper filed after the original pleading shall be served upon each of the parties. If service is required or permitted to be made upon a party represented by an attorney, service shall be made upon the attorney unless service upon the party is ordered by the court. Service upon the attorney or upon a party shall be made by delivery of a copy or by mailing it to the address most recently stated in a pleading or paper filed by the attorney or party, or if not stated, to the last known address."

That Rule is one of general application. Md.Rule P4 b.1, dealing specifically with constructive contempt proceedings, provides:

"Show Cause Order.

(a) Issuance.

If the court determines to cite the defendant for contempt, it shall issue an order requiring the defendant to show cause why an order adjudging him in contempt shall not be passed within the time stated therein.

(b) Contents.

The show cause order shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the contempt charged.

(c) Service.

The show cause order shall be served upon the defendant pursuant to Rule 2-121 unless the defendant has appeared as a party in the action in which the contempt is charged, *in which case service shall be in the manner prescribed by the court.*"

(Emphasis added.) [2]

We presume that it was on the basis of one of these two Rules that the court directed service of the show cause order on Mr. Evans, for we know of no other Rule or statute that would authorize such service.

Rule 2-132(d), on the other hand, provides: "When no appeal has been taken from a final judgment, the appearance of an attorney is automatically terminated upon the expiration of the appeal period unless the court, on its own initiative or on motion filed prior to the automatic termination, orders otherwise."

---

**2.** Md.Rule 2-121, referred to in ¶ (c), deals with the method of service of process—essentially

"delivering to the person to be served a copy of the summons, complaint, and all other papers filed with it, or by mailing to the person to be served a copy of the summons, complaint, and all other papers filed with it by certified mail requesting: 'Restricted Delivery—show to whom, date, address of delivery.'"

■ We have concluded that Judge Turk's order of January 22, 1987 constituted a final judgment in the action. There being nothing in this record to indicate any "orders otherwise" by the court, it follows that Mr. Evans's appearance on behalf of Wayne was automatically terminated 30 days thereafter. When Helen filed her petition for contempt, therefore (and when the court issued the show cause order), Mr. Evans was no longer counsel of record for Wayne. The obvious question, then, is whether the general language in either Rule 1–321(a) or Rule P4 b.1(c) permits service on an attorney whose appearance has been automatically terminated pursuant to Rule 2–132(d). The answer is equally obvious—No.

Rule 2–132(d) has a statutory base. Md.Ann.Code art. 10, § 45 provides:

"Notwithstanding any other provision of law or any other provision of this Code or rule of court, the appearance of an attorney in any action, cause or proceeding, civil or criminal, before any court of original jurisdiction in this State shall be deemed to have terminated *for the purpose of service of any motion, process, or any other pleading upon completion of the case ending in a verdict, adjudication, decree or final order, from which no appeal is taken when the time allowed for an appeal has expired.* There shall be no action required of any person or attorney under this section, but the court having jurisdiction of the matter may suspend the termination of the appearance on its own motion or provided any party to the case offers a motion prior to the expiration of the time for appeal to require that the attorney move to strike his appearance according to the Maryland Rules of Procedure."

(Emphasis added.)

This statute was enacted in 1972 (1972 Md.Laws, ch. 122). At the time, the Rules applicable to both civil and criminal proceedings provided that an attorney's appearance could be stricken only with leave of court. See former Md.Rules 125a and 751a. Responding to the statute, the Court of

Appeals Standing Committee on Rules of Practice and Procedure recommended and the Court adopted amendments to those Rules. See Forty–Fifth Report of the Standing Committee on Rules, June 20, 1973. Rule 125, in particular, was amended by the addition of a new section e, which provided:

"The appearance of an attorney shall be automatically terminated, *for the purpose of service upon him of any process, notice or pleading,* upon the entry of final judgment from which no appeal is taken, when the time allowed for such appeal has expired. However, prior to the expiration of the time for appeal the court, for good cause, on its own motion or on motion of a party, may suspend the termination of the appearance."

(Emphasis added.)

It is evident from the plain wording of both the statute, which remains intact, and the addition to Rule 125 that their purpose was to prevent the very kind of thing that happened here. When the first part of the Maryland Rules was revised in 1984, Rule 125e was replaced by Rule 2–132(d), and, although the specific language speaking of service of "process, notice, or pleading" was deleted, no change in substance or purpose was either intended or effected. Judge Niemeyer and Ms. Richards, in their *Maryland Rules Commentary,* at 34, say of Rule 2–132:

"Service on an attorney continues so long as the party is represented by an attorney. If the attorney's appearance is withdrawn or stricken without entry of another appearance by counsel, service is made on the party. After a judgment is entered and the time for appeal has expired, the appearance of counsel automatically terminates under Rule 2–132. Service is then directed to the party until the same or new counsel enters an appearance."

█ It may be, as Helen now argues, that in other States contempt proceedings arising from an alleged failure to pay court-ordered support are regarded as a "continuation" of the original case. For some purposes, that may also be true in Maryland. But that is not the point. Our law requires

that, for the contempt action to proceed, the petition and a show cause order must be served upon the defendant and if, as here, the appearance of defense counsel has been automatically terminated pursuant to Rule 2–132(d) and art. 10, § 45, that service is not effected by mailing the papers to the attorney.

There having been no service validly made upon Wayne, it is evident that the court had no authority to enter the judgment.

JUDGMENT REVERSED; APPELLEE TO PAY THE COSTS.